United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 12, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

05-51279
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHARLES PHELPS, JR.,
also known as Mr. D,
also known as Dave Smith,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas, Waco

_____

Before REAVLEY, JOLLY, and BENAVIDES, Circuit Judges.

PER CURIAM:

Appellant's principal argument is that the district court
erred in calculating the amount of tax loss, which determined the
base offense level under the Sentencing Guidelines. We affirm.

I. BACKGROUND

Charles Phelps, Jr. (Appellant) managed various adult
entertainment businesses for his codefendant, John Kenneth Coil.
Over a period of several years, Appellant caused corporate monies
to be falsely reported as wages paid to his family members.

Ultimately, Appellant pleaded guilty to one count of conspiracy to defraud the United States by impeding the IRS in its collection of revenue in violation of 18 U.S.C. § 371.[1] The district court sentenced him to 42 months of imprisonment. On appeal, this Court remanded the case in light of *United States v. Booker,* 543 U.S. 220 (2005). On remand, after an evidentiary hearing, the district court found that Appellant intended to cause more than $80,000 but less than $200,000 in tax loss.[2] The district court sentenced Appellant to 36 months of imprisonment.

II.  ANALYSIS

A.  TAX LOSS CALCULATION

Appellant argues that the district court erred in calculating the amount of tax loss, resulting in an incorrect base offense level. This Court reviews a district court's application of the guidelines *de novo* and factual findings for clear error. *United States v. Roush,* 466 F.3d 380, 385 (5th Cir. 2006).

The district court found that the tax loss attributable to Appellant was more than $80,000 and less than $200,000, which translates to a base offense level of 16 under the Tax Table

---

[1]  In exchange for his guilty plea, the remaining thirty-one counts in the indictment were dismissed.

[2]  Appellant's original sentence had been based on a finding of a tax loss of more than $200,000 and less than $400,000.

located in U.S.S.G. § 2T4.1.[3]

At the hearing before the district court on remand, Appellant presented the expert testimony of a financial investigator, Laura Sanders. Sanders presented a calculation of the tax loss attributable to Appellant as $80,463.64; however, she also testified that the excess social security taxes paid through Appellant's family members' fraudulent tax filings should be credited against that figure.

If Appellant is not entitled to such a credit, then even the defense expert's calculation results in a base offense level of 16. Thus, we must determine whether Appellant is entitled to credit any excess payments of social security taxes against the tax loss. As discussed below, that depends upon whether the payment is considered intentional. This Court apparently has not addressed this precise question but there is precedent that informs it. In *United States v. Moore,* 997 F.2d 55 (5th Cir. 1993), the defendants, like Appellant, were convicted of defrauding the United States in violation of 18 U.S.C. section 371. On appeal, those defendants argued that instead of using an "intended tax loss" amount, the court should have used the actual tax loss (zero) to the government. *Id.* at 60. The fraudulent refunds apparently had been recovered from the taxpayers. This Court rejected their

---

[3] The 2001 version of the Sentencing Guidelines Manual was used for offense level computation.

3

argument. Although the *Moore* defendants were sentenced under U.S.S.G. § 2T1.4,[4] as opposed to § 2T1.1, we find it is informative. This Court noted that the amount of tax loss determines the base offense level for several offenses, including tax evasion under § 2T1.1. *Moore,* 997 F.2d at 61. Indeed, we further noted that "[t]he cross references in these sections and the accompanying comments plainly indicate that the amount of the 'tax loss' is to be calculated *in a similar manner in each provision,* and that the amount the parties *attempted* to illegally obtain from the government controls over their eventual failure to actually acquire and retain their illegal refunds." *Id.* (emphasis in opinion).

Subsequently, we have relied on *Moore* for the propositions that "tax loss" is to be calculated in the same manner for sections 2T1.1, 2T1.3, and 2T1.4, and that tax loss is the intended loss, not the government's actual loss. *United States v. Clements,* 73 F.3d 1330 (5th Cir. 1996). Thus, we conclude that the analysis in *Moore* is applicable to the instant case.

Here, the district court expressly recognized that the issue was "the intended loss or potential loss, not necessarily the actual loss." The court further found as follows:

> I find that the evidence is more than sufficient to use
> as an amount of loss in calculating the base offense

---

[4]   § 2T1.4 (Aiding, Assisting, Procuring, Counseling, or Advising Tax Fraud).

level the amounts attributable to him in the form of additional taxes. And that's basically embodied in Government Exhibit 1 in this case. It's less than $200,000, but it's more than $80,000.

. . . .

There's just no question in my mind that Mr. Phelps, regardless of any effort, today or otherwise, to put all the blame on Mr. Coil, that he *intentionally* set out to conceal the source of these funds, to conceal the true recipient of the funds, to do everything possible he could to hide what was going on, and with the obvious . . . if not objective side effect of fooling the Internal Revenue Service and trying to avoid the payment of taxes that were justly due and owing.

(emphasis added).

Appellant points out that the Second Circuit has interpreted § 2T1.1 as giving a "defendant the benefit of legitimate but unclaimed deductions" in calculating the tax loss. *United States v. Martinez-Rios,* 143 F.3d 662, 671 (2d Cir. 1998). Appellant candidly acknowledges the Tenth Circuit's opinion rejecting such an approach:

> We do not interpret this provision as giving taxpayers a second opportunity to claim deductions after having been convicted of tax fraud. It must be remembered that, in tax loss calculations under the sentencing guidelines, we are not computing an individual's tax liability as is done in a traditional audit. Rather, we are merely assessing the tax loss resulting from the manner in which the defendant chose to complete his income tax returns.

*United States v. Spencer,* 178 F.3d 1365, 1368 (10th Cir. 1999). Additionally, the Seventh Circuit has opined that "the current definition of tax loss appears to exclude consideration of unclaimed deductions." *United States v. Chavin,* 316 F.3d 666, 678

5

(7th Cir. 2002). The Court persuasively explained that the object of a defendant's "offense was the amount by which he underreported and fraudulently stated his tax liability on his return; reference to other unrelated mistakes on the return such as unclaimed deductions tells us nothing about the amount of loss to the government that his scheme intended to create." *Id.* at 677.

We believe our precedent is more aligned with that of the Seventh and Tenth Circuits. We are not persuaded that the amount of tax loss Appellant intended to cause should be reduced simply because his scheme to defraud apparently inadvertently caused payment of excess social security taxes. More importantly, Appellant has not shown that the district court clearly erred in finding that he had the intent to cause more than $80,000 in tax loss. Appellant is not entitled to relief.

### B.   SIXTH AMENDMENT CHALLENGE

Appellant contends that the district court erred in enhancing his sentence based on findings of fact made by a preponderance of the evidence. He argues that the Sixth Amendment was violated because the findings were not proven beyond a reasonable doubt. Appellant recognizes that our precedent precludes this claim. *United States v. Mares,* 402 F.3d 511 (5th Cir.), *cert. denied,* 126 S.Ct. 43 (2005); *United States v. Johnson,* 445 F.3d 793 (5th Cir.), *cert. denied,* 126 S.Ct. 2884 (2006). He raises it simply to preserve it for further review.

AFFIRMED.